UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES R. McCLELLAN,

                   Plaintiff,           Civil Action No. 19-CV-11970
                                          Honorable Laurie J. Michelson
v.                                     Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                   Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 15]

Plaintiff James R. McClellan, Jr. ("McClellan") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed summary judgment motions (ECF Nos. 13, 15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that McClellan is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**ECF No. 15**) be **GRANTED**, McClellan's Motion for Summary Judgment (**ECF No. 13**) be **DENIED**, and pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

McClellan was 42 years old at the time of his alleged onset date of November 21, 2013, and at 5'11" tall weighed approximately 209 pounds during the relevant time. (Tr. 193, 247). He completed two years of college. (Tr. 248). His previous work history includes serving in the United States Army and working as a cable contractor. (Tr. 248, 1067). McClellan's alleged disabling conditions include: "low back pain, left leg pain, bilateral knee pain, headaches, post traumatic stress disorder, severe major depression, anxiety, left hip pain and urination problems." (*Id.*).

This case has a lengthy and unusual procedural history. McClellan applied for benefits on November 21, 2013. (Tr. 132-35). The SSA initially granted that application. (Tr. 110-31). However, following a January 2015 fraud investigation, a single decisionmaker issued another disability determination, overruling the prior determination. (Tr. 129, 853-64).

McClellan filed a timely request for an administrative hearing, which was held before Administrative Law Judge ("ALJ") Kendra S. Kleber on August 26, 2015. (Tr. 36-96). McClellan, who was represented by attorney Edward Gallagher, testified at the hearing, as did vocational expert Mary Edwards, and McClellan's wife, Michelle. (*Id.*). On October 15, 2015, the ALJ issued a written decision finding McClellan not disabled under the Act. (Tr. 10-30). On December 18, 2015, the Appeals Council ("AC") denied review. (Tr. 1-3). McClellan timely filed for judicial review of the final decision on February 18, 2016. (Tr. 1124).

On December 19, 2016, the undersigned filed a Report and Recommendation, recommending the case be remanded for additional consideration by the ALJ. (Tr. 1149-61). The Commissioner objected to the Report and Recommendation, and, on March 30, 2017, the

Honorable Laurie J. Michelson issued an Opinion and Order adopting the Report and

Recommendation in part, and remanding the case.  (Tr. 1162-179).  The easiest way to explain the

issues presently before this Court is to begin with the background and analysis contained in Judge

Michelson's Opinion and Order:

> McClellan, now 45 years old, served in the armed forces for about 20 years
> and has also worked as a financial consultant. (Tr. 74, 418–19.) In 2009,
> while deployed in Afghanistan, McClellan was carrying an 80-pound pack,
> his firearm, and some bags up a hill and fell backward. (Tr. 61.) He might
> have (though the evidence suggests probably not) suffered a traumatic brain
> injury. (*See* Tr. 683, 764, 1009.) In 2014—if not earlier—McClellan was
> diagnosed with posttraumatic stress disorder and severe, major depressive
> disorder. (Tr. 415.)  Among the events supporting those diagnoses were
> falling off a ship and being caught in a safety net before hitting the ocean,
> being within 50 feet of a pipe-bomb explosion, riding in a Blackhawk
> helicopter under fire, and serving as a pallbearer for eighteen fellow soldiers.
> (Tr. 64, 420–21.)  As a result of his TBI or PTSD and depression (or both)
> McClellan suffers from cognitive deficits, including difficulties in verbal
> reasoning, verbal comprehension, and processing speed. (Tr. 1009.) Dr.
> Hisanori Hasegawa, a neurologist who treated McClellan for severe
> headaches, has opined that McClellan is "clinically disabled." (Tr. 928.)
> After treating McClellan's PTSD and depression for almost a year, Lisa
> Porta, a licensed clinical social worker, and Dr. Thomas Zatolokin, a
> psychiatrist, opined that McClellan had many severe cognitive limitations,
> including "[n]o useful ability" to understand and remember very short and
> simple instructions. (*See* Tr. 839, 869, 1014.) The Department of Veterans
> Affairs gave McClellan a 100% disability rating based on his TBI, PTSD,
> and depression. (Tr. 362.)

> McClellan believes that his cognitive and physical limitations prevent him
> from maintaining any full-time job. As such, in 2014 he applied for disability
> benefits from the Social Security Administration. (Tr. 13.) Initially,
> McClellan was awarded benefits. (*See* Tr. 110.)  But after a fraud
> investigation revealed that he was able to follow directions to locate and
> retrieve a 20-pound item at Home Depot, shop at other stores, go down water
> slides, gamble at casinos (including table games), and go out to dinner
> multiple times with family and friends (Tr. 860–61, 863), the award of
> benefits was overruled (Tr. 132–35).

> McClellan challenged that decision.  Administrative Law Judge Kendra
> Kleber, relying significantly on the fraud-investigation report, concluded
> that McClellan was not under a "disability" as that term is used in the Social
> Security Act. (*See* Tr. 13–30.) In reaching this conclusion, she assigned Dr.
> Hasegawa's opinion "little weight" because it was "inconsistent with the

record as a whole." (Tr. 24.) And she assigned the joint Porta-Zatolokin opinion "little weight" because it was "grossly inconsistent with the record as a whole," including the fraud investigation report. (Tr. 25.) As for the Department of Veterans Affairs' disability rating, the ALJ stated that the VA had "its own rules for determining disability" and that, while she had considered the VA's opinion, "the record does not support a finding of disabled." (Tr. 24.) After further administrative appeal was denied, the ALJ's disability determination became the final decision of the Commissioner of Social Security. (Tr. 1.)

* * *

The Magistrate Judge recommends remanding this case for three reasons. (R. 17.)  For one, he says that substantial evidence does not support the ALJ's finding that the Hasegawa opinion and the Porta-Zatolokin opinion were "inconsistent with the record as a whole."  (R. 17, PID 1145.)  Second, the ALJ violated a significant procedural rule by not adequately explaining why she gave these two opinions little credence.  (R. 17, PID 1146.)  Third, the Magistrate Judge found that the ALJ failed to adequately consider the VA's disability rating.  (R. 17, PID 1147–48; *see also* Tr. 362.)  The Magistrate Judge thus recommends that this Court send this case back to the ALJ so she can further consider and further explain her consideration of the Hasegawa opinion, the Porta-Zatolokin opinion, and the VA's disability rating.  (R. 17, PID 1148.)

The Commissioner objects to this recommendation. (R. 18.) She asserts that the Hasegawa opinion is entitled to "no weight whatsoever" because it merely states that McClellan was disabled (which is a determination that the law reserves for the Commissioner, not a physician) and because Dr. Hasegawa merely adopted McClellan's own assessment of his ability to work. (R. 18, PID 1152.) The Commissioner also argues that the Porta-Zatolokin opinion was "not entitled to any significant weight" because Porta and Dr. Zatolokin failed to support their severe functional limitations with anything other than a listing of medical diagnoses. (R. 18, PID 1153.) The Commissioner further argues that, contrary to the Magistrate Judge's determination, the ALJ provided good reasons for discounting the two treating-source opinions, primarily the fraud-investigation report. (*See* R. 18, PID 1154–60.)  As for the VA's rating, the Commissioner argues that when the ALJ's narrative is read as a whole, it is clear that the ALJ could not accept the rating "because it was inconsistent with the [fraud-investigation] report and [McClellan's] normal mental status exams." (R. 18, PID 1160–61.) Thus, the Commissioner concludes, this Court should reject the Magistrate Judge's recommendation and instead affirm her conclusion that McClellan is not disabled under the Social Security Act. (R. 18, PID 1162.)

(Tr. 1163-65).

4

Judge Michelson then determined that "the Court will not adopt the Magistrate Judge's finding that the ALJ lacked substantial evidence for assigning the Hasegawa and Porta-Zatolokin opinions little weight." (Tr. 1166). As to Dr. Hasegawa, Judge Michelson explained, "[t]his Court questions whether Dr. Hasegawa's opinion is well supported by objective testing," "it appears that Dr. Hasegawa relied heavily on McClellan's self-assessment," and Dr. Hasegawa failed to provide "functional limitations." (Tr. 1166-67). As to Drs. Porta and Zatolokin, Judge Michelson explained that despite the fact that "that Dr. Zatolokin often increased McClellan's half-dozen mental-health medications and that Porta thought McClellan's PTSD made him a candidate for inpatient treatment," it was "unclear what objective evidence Porta and Dr. Zatolokin relied on to find that McClellan had very severe functional limitations," "[t]heir check-box opinion merely lists McClellan's diagnoses—not any objective testing," their PHQ-9 and PCL-L evaluations "were primarily based on McClellan's subjective view of his symptoms," and the doctors' notes reflected that McClellan's "concentration and attention appeared to be within normal limits" the majority of the times they saw him. (Tr. 1168-69). Finally, Judge Michelson found that other doctors' opinions, while mixed[1] were "arguably inconsistent with complete disability as indicated by Hasegawa and some of the most severe functional limitations identified by Porta and Dr.

---

[1] For instance, Judge Michelson noted that Dr. Richard Coder found that McClellan's "attention and basic verbal fluency" were below the normal range but also found McClellan "demonstrated ability to understand and follow directions within the normal range." (Tr. 1169). Judge Michelson noted that Dr. Karl Goler found McClellan had "cognitive impairment," and that his "[h]eadaches preclude[d] work on a daily basis, but also noted that "it appears that the only objective testing Dr. Goler performed was the Montreal Cognitive Assessment, 'a rapid screening instrument for *mild* cognitive dysfunction.'" (Tr. 1170) (emphasis in original). And, Judge Michelson noted that Dr. Adrienne West found McClellan's phonemic verbal fluency was moderately impaired, and that his semantic verbal fluency and processing-speed tasks were "severely" impaired, while his nonverbal reasoning and "basic attention and working memory" were average, he had "particular strengths in 'mental set shifting, problem solving, and concept formation,'" and that his cognitive disorder was "mild." (*Id.*).

Zatolokin."    Accordingly, Judge Michelson "decline[d] to find that [the other doctors']
assessments would render the ALJ's rejection of the Hasegawa and Porta-Zatolokin opinions
unreasonable."

For all of these reasons, Judge Michelson found that the ALJ's decision to assign "little
weight" to the Hasegawa and Porta-Zatolokin opinions did not lack substantial evidentiary support.
Nevertheless, Judge Michelson determined that remand was appropriate because:

> Even when substantial evidence supports an ALJ's rejection of a treating-
> source opinion, remand is still warranted if a claimant (or a reviewing court)
> cannot understand *why* the ALJ rejected the opinion. *See Wilson v. Comm'r
> of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  In other words, it is not
> enough that a reviewing court or the Commissioner on appeal can identify
> sound evidentiary bases for rejecting a treating-source opinion—*ALJs* must
> set out *their* bases in *their* narrative.  *See id.* ("A Social Security Ruling
> explains that . . . a decision denying benefits must contain specific reasons
> for the weight given to the treating source's medical opinion, supported by
> the evidence in the case record, and must be sufficiently specific to make
> clear to any subsequent reviewers the weight the adjudicator gave to the
> treating source's medical opinion and the reasons for that weight." (internal
> quotation marks omitted)).  This is known as the "good reasons" aspect of
> the treating-source rule and it "exists, in part, to let claimants understand the
> disposition of their cases, particularly in situations where a claimant knows
> that his physician has deemed him disabled and therefore might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless
> some reason for the agency's decision is supplied." *Id.* (internal quotation
> marks omitted)).

> Upon a careful review of the ALJ's narrative, the Court does not believe that
> McClellan (or, objectively, a reasonably-competent claimant in his position)
> would understand why the ALJ rejected the opinion of Dr. Hasegawa.  The
> treating neurologist had seen McClellan four times over six months (Tr. 928,
> 946, 951, 1025) and, as noted, increased McClellan's medications on at least
> three of those occasions (Tr. 929, 946, 951).  The ALJ did not acknowledge
> either of these facts anywhere in her narrative.  In fact, the entirety of her
> analysis of Dr. Hasegawa's opinion was as follows: "On May 29, 2015,
> neurologist Hisanori Hasegawa, M.D., opined that Mr. McClellan was
> clinically disabled by headaches, possible seizure, anger, and closed head
> injury. (exh. 8F, pp. 7-8) I accord Dr. Hasegawa's opinion little weight
> because it is inconsistent with the record as a whole." (Tr. 24.)  A mere
> statement that a treating-source opinion "is inconsistent with the record as a
> whole" does not comply with the "good-reasons" requirement of the treating-

6

source rule.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that ALJ's assignment of "little weight" to a treating-source opinion along with an explanation that the opinion was "not well-supported by any objective findings" and was "inconsistent with other credible evidence" did not comply with the good-reasons requirement); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

The ALJ said more regarding the Porta-Zatolokin opinion.  In particular, she explained that Dr. West had administered objective testing that "demonstrated far fewer and less severe impairments" than those indicated by Porta and Dr. Zatolokin. (Tr. 25.)  The ALJ also provided that Porta and Dr. Zatolokin's severe limitations, including the inability to remember and understand very short and simple instructions, were undermined by the fraud investigation, including McClellan's ability to "gamble at multiple casinos, pay attention to detail, and follow instructions." (R. 25.)  Elsewhere in her narrative, the ALJ explained that while McClellan told Porta that he could not remember their discussions at prior therapy sessions, this was contradicted by the finding in the fraud-investigation report that McClellan could remember part of a three-week-old phone conversation. (R. 23.)  The ALJ also explained that McClellan routinely answered "Extreme" to the PCL-C questions, but, according to the investigation report, McClellan was able to shop, attend sporting events, socialize at a water park, and go to restaurants. (R. 22.)

The foregoing probably satisfies the ALJ's obligation to provide McClellan with good reasons for rejecting the Porta-Zatolokin opinion.  Still, the Court is concerned that the ALJ did not acknowledge the length of McClellan's treating relationship with Porta and Dr. Zatolokin nor did she acknowledge the fact that Dr. Zatolokin routinely increased McClellan's psychological medications, which, as noted, were many.  Additionally, while a number of Dr. West's findings were arguably not consistent with the extreme limitations in the Porta-Zatolokin opinion, the ALJ said nothing about Dr. West's findings of "severe[]" impairments in semantic verbal fluency and certain processing-speed tasks. (*See* Tr. 22, 24, 1009.)

Judge Michelson then noted, "Where, as here, an ALJ fails to comply with the explanatory aspect of the treating-source rule, remand is the normal course. *See Wiser v. Comm'r of Soc. Sec.*, 627 F. App'x 523, 526 (6th Cir. 2015).  But sometimes remand is unnecessary. *See id.* In *Wilson*, the Sixth Circuit hypothesized scenarios where an ALJ's failure to comply with the "good reasons" requirement might be harmless: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly

credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547; *see also Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–75 (6th Cir. 2016) (applying *Wilson*'s first exception); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (applying *Wilson*'s third exception).

While close, the Court does not believe that Dr. Hasegawa's opinion is "so patently deficient that the Commissioner could not possibly credit it." True, as discussed, Dr. Hasegawa opined on the legal issue of disability and seemed to adopt McClellan's self-assessment of his ability to function. But, significantly, Dr. Hasegawa was aware of the EEG test results, believed McClellan's condition was severe enough to regularly increase his medications, and thought that McClellan's impairments warranted a speech-language evaluation. Further, as discussed, some of the objective testing could be interpreted to support Dr. Hasegawa's opinion. While there may well be good reasons to reject Dr. Hasegawa's opinion, it is not impossible to credit.

\* \* \*

. . . a fair argument could be made that even if the ALJ did not comply with the letter of the explanatory requirement, she complied with its purpose. The Court declines to make this finding, however, because while this Court might be able to connect various parts of the ALJ's narrative, it is not apparent that McClellan could.

Still, if all that was problematic about the ALJ's narrative was her treatment of Dr. Hasegawa's opinion, the Court might hesitate to remand. But the Court also finds problematic the ALJ's treatment of the VA's rating. The VA provided that if McClellan's cognitive deficiencies were solely attributable to his PTSD and depression, he would have received a 70% disability rating. (Tr. 369.) And, it appears, the primary basis for this rating was Dr. Coder's assessment. (*See* Tr. 366.) Likely because Dr. Coder's assessment was not strictly an opinion (it provided no functional limitations), the ALJ did not say whether she found his assessment credible. (*See* Tr. 21.) But without a determination by the ALJ that Dr. Coder's assessment was not credible or uninformative, it is not immediately apparent why the ALJ rejected the VA's disability rating based on that very assessment.

In her objections, the Commissioner points out that the ALJ stated she was rejecting the VA's rating because "the record does not support a finding of disabled." (R. 18, PID 1160–61.) This is true. (Tr. 24.) And from this statement the Court can infer that the ALJ was referring primarily to Dr.

West's assessment and the fraud-investigation report. The problem with this argument, however, is that it is not apparent how Dr. Coder's assessment is inconsistent with Dr. West's assessment and the fraud-investigation report.

In short, although the Court imposes no general explanation requirement, in this particular case the ALJ should have explained further why she was rejecting the VA's rating.

(Tr. 1172-78.)

For all of these reasons, Judge Michelson remanded this matter, instructing that "the ALJ should further explain why Dr. Hasegawa's opinion and the VA's disability rating were effectively rejected. In doing so, the ALJ may, but is not required to, assign greater weight to Dr. Hasegawa's opinion or Porta and Dr. Zatolokin's opinion for the reasons set forth in the Magistrate Judge's opinion." (Tr. 1178).

On June 13, 2017, the AC then vacated the prior administrative decision, and assigned ALJ Loughlin to the case. (Tr. 1181-86). The AC directed ALJ Loughlin to comply with Judge Michelson's March 30, 2017 Remand Order quoted above

(Tr. 1178).

ALJ Loughlin held a second hearing on October 14, 2017. (Tr. 1077). McClellan, represented again by attorney Edward Gallagher, testified at the hearing, as did vocational expert Toni Marie McFarland, and McClellan's wife, Michelle. (Tr. 1077-1120). On March 28, 2018, ALJ Loughlin issued a written decision finding McClellan not disabled under the Act. (Tr. 1042-1069). On May 16, 2019, the Appeals Council denied review. (Tr. 1039-1040). McClellan timely filed for judicial review of the final decision on July 2, 2019. (ECF No. 1.)

The Court has thoroughly reviewed the lengthy transcript in this matter, including McClellan's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make

references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.      The ALJ's application of the disability framework analysis**

Under the Act, disability benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of the following five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the

analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that McClellan was not disabled under the Act. (Tr. 1046). At Step One, the ALJ found that McClellan had not engaged in substantial gainful activity since November 21, 2013. (Tr. 1047). At Step Two, the ALJ found that McClellan had the following severe impairments: "lumbar degenerative disc disease status post surgery; cervical degenerative disc disease; bilateral knee chondromalacia; sleep apnea; chronic obstructive pulmonary disease; migraines; bipolar disorder; and anxiety disorder." (Tr. 1047). At Step Three, the ALJ found that McClellan's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (Tr. 1048).

The ALJ then assessed McClellan's residual functional capacity, concluding that he was capable of performing light work, with the following additional limitations:

> [T]he claimant must be allowed to alternate between standing and sitting every 30 minutes while remaining on task; can frequently push or pull or operate foot controls with the left lower extremity; can occasionally balance, kneel, crouch, stoop and crawl; can occasionally climb stairs and ramps; can never climb ladders, ropes or scaffolds; can never be exposed to vibrations, unprotected heights and moving machinery parts; can never be exposed to strobe lights, flashing lights and bright lights, such as those found on a theatre stage; can have occasional exposure to dusts, noxious odors, fumes and poor ventilation; is able to understand and remember simple instructions, make simple work-related decisions, carry-out simple instructions, but cannot perform work requiring a specific production rate, such as assembly line work or hourly quota; can occasionally deal with changes in a routine work setting, and can occasionally deal with supervisors and coworkers but not the public; and must be approved to wear prescription sunglasses while on task.

(Tr. 1050).

11

At Step Four, the ALJ found that McClellan was not capable of performing his past relevant work as a cable contractor or human resource personnel manager.  (Tr. 1067).  At Step Five, the ALJ found, based in part on testimony provided by the vocational expert in response to hypothetical questions, that McClellan could perform the jobs of office helper (113,000 jobs nationally), router (140,000 jobs nationally), and inspector (100,000 jobs nationally).  (Tr. 1068). As a result, the ALJ concluded that McClellan was not disabled under the Act.  (Tr. 1069).

### C.    Standard of review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884

F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.     Analysis

McClellan claims that ALJ Loughlin failed to properly comply with Judge Michelson's remand order.  (ECF No. 13, PageID.2418-19.)  First, he claims the ALJ "failed to provide any meaningful analysis" as to why McClellan would qualify for Veterans Affairs benefits, but not disability benefits under the SSA.  (*Id.*, PageID.2419-2423.)  Second, he claims the ALJ failed to properly consider and weigh the medical restrictions imposed by Dr. Hasegawa.  (*Id.*, PageID.2423-24.)  Third, he argues that the ALJ failed to properly "reconsider the weight given to the opinions and restrictions of treating psychiatrists, Dr. Zatolokin, and Social Worker/Therapist Porta."  (*Id.*, PageID.2424-2426.)

The Commissioner counters that "this case is not about the ALJ's compliance with the remand order on *McClellan I*."  (ECF No. 15, PageID.2435.)  The Commissioner points out that, "[o]n remand, SSA vacated the prior decision and assigned ALJ John Loughlin to this case."  (*Id.*, PageID.2436.)  The Commissioner also argues that ALJ Loughlin's decision is supported by substantial evidence.  (*Id.*, PageID.2439.)  In support of this argument, the Commissioner points out that ALJ Loughlin assigned "little weight" to the VA disability rating due to the "fundamental

differences between the VA disability ratings and the Social Security disability evaluation." (*Id.*, PageID.2440.) The Commissioner also points out that ALJ Loughlin gave multiple reasons for discounting Dr. Hasegawa's opinion. (*Id.*, PageID.2449.) Lastly, the Commissioner argues that the "ALJ supportably discounted the Porta/Zatolokin opinion because it was inconsistent with the medical evidence of record and based on Plaintiff's subjective complaints." (*Id.*, PageID.2453.)

The Court must initially address the issue of whether the Appeals Council ordered ALJ Loughlin to follow Judge Michelson's remand order. The Commissioner's own regulations require an ALJ to "take any action that is ordered by the Appeals Council...." *See* 20 CFR § 404.977(b). The Appeals Council's order in this matter stated: "[T]he Appeals Council vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings ***consistent with the order of the court***." (Tr. 1184)(emphasis added). Therefore, contrary to the Commissioner's argument, the AC did not simply vacate the prior decision. Rather, it directed the ALJ to conduct proceedings "consistent with" Judge Michelson's remand order described above. (Tr. 1184). Accordingly, on remand, the ALJ was obligated to address the various issues identified by Judge Michelson. *See supra* at 3. For the reasons explained below, however, ALJ Loughlin did just that, and his decision is supported by substantial evidence.

1. *ALJ Loughlin provided a reasoned explanation as to why the SSA rejected Dr. Hasegawa's opinion, and that explanation is supported by substantial evidence*

ALJ Loughlin specifically noted that, "[t]he Court [] required additional explanation as to why the opinion provided by Dr. Hasegawa was provided only little weight." (Tr. 1062). Dr. Hasegawa's opinion was that McClellan was "'clinically disabled' due to headaches, 'possible seizure,' anger and a closed head injury." (*Id.*). ALJ Loughlin went on to state: "I concur with the findings of the previous ALJ, as [the] assessment by Dr. Hasegawa is inconsistent with the

14

findings of the medical record as a whole." (*Id.*).  ALJ Loughlin explained:

> [T]here is no medical evidence substantiating the presence of any seizure
> disorder as affirmed by multiple EEGs (Exhibits 15F/51 &24F), and the
> claimant has never been medically determined to have a traumatic brain
> injury, as documented by several negative brain MRIs.  (Exhibits 19F/20 &
> 24F).  He has also been shown to have good control of his migraines with
> the use of medication. (Exhibits 2F, 4F/58 & 16F/44).  The evidence further
> establishes no substantial issues with cognition or concentration problems,
> as seen in several evaluations and therapy session notes, with the claimant's
> allegations of anger to be substantially exaggerated.  (Exhibits 6F, 15F &
> 16F).  It is additionally inconsistent with her own findings in the evaluation,
> as despite the claimant's allegations of cognitive issues and concentration
> problems, he was cooperative during the evaluation, following commands,
> with spontaneous speech and normal judgment and insight, and completely
> neurologically intact.  Dr. Hasegawa's assessment, therefore, is clearly
> based entirely upon the claimant's subjective allegations.  As it is
> inconsistent with both the longitudinal record and her own evaluation notes,
> I must afford it little weight.

(Tr. 1062-63).

This narrative satisfies the treating-physician opinion rules relevant to this case.[2]  As Judge

Michelson stated, "[e]ven when substantial evidence supports an ALJ's rejection of a treating

source opinion, remand is still warranted if the claimant (or a reviewing court) cannot understand

***why*** the ALJ rejected the opinion. *See McClellan v. Comm'r of Soc. Sec.*, 16-10593, 2017 WL

1173772, at *6 (E.D. Mich. 2017)(citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th

Cir. 2004)(emphasis added).  Here, ALJ Loughlin explained why he accorded Dr. Hasegawa's

opinion "little weight" and specifically referred to substantial evidence in the record.  (Tr. 922-

1005, 970, 1062-63, 1959, 1980, 2319).

First, ALJ Loughlin stated that the record contains no objective evidence of a seizure

disorder as affirmed by EEGs.  (Tr. 1062-63).  This is consistent with records from St. Mary's

---

[2] Because McClellan's underlying claim was filed before the new regulations for evaluating
medical opinion evidence took effect (March 27, 2017), the Court analyzes the ALJ's handling of
treating source opinions under the prior "treating physician rule."  *See* 20 C.F.R. § 404.1527(c).

Hospital showing McClellan's EEGs presented no evidence of seizure activity.   (Tr. 2319).

Second, ALJ Loughlin stated that the record contains no objective evidence of traumatic brain

injury as affirmed by MRIs.  (Tr. 1062-63).  This statement is also supported by the objective

evidence from the VA Hospital, which contained "no MRI evidence of abnormal brain lesion."

(Tr. 1959, 1980; 1009 ("This pattern is not typical with traumatic brain injury")).   Third, the ALJ

stated that McClellan's headaches improved with medication, which finds at least some support in

the record.  (Tr. 970; Tr. 928-29 (noting that "[e]ach time he took the medication [Lamotrigine] it

lasted for two hours of headache free," and increasing his dosage of that medication); Tr. 1539

(2016 Progress notes indicate "Migraines will *continue* to be controlled" with medication)

(emphasis added); Tr. 1575 (McClellan's migraine improved after two doses of Sumatriptan as

prescribed)).   Moreover, Dr. Hasegawa's actual opinion was not that McClellan's headaches

rendered him functionally unable to perform any work, but that "[McClellan] is pretty much unable

to find a job for this problem."  (Tr. 928).  In other words, Dr. Hasegawa did not impose a specific

functional limitation owing to McClellan's headaches.   And, McClellan's headaches did not

prevent him from gambling (something he did frequently enough that his wife had to take over the

finances and give him an allowance) and participating in the other activities discussed herein.

Moreover, although Dr. Zatolokin did impose specific mental limitations in the assessments he

prepared, he did not indicate that McClellan's headaches caused of any of those limitations.  (Tr.

1016, 2343.)

Lastly, the ALJ stated that the record shows no substantial cognition or concentration

problems, except when McClellan purposely focused his subjective statements to support a finding

of disability.  (Tr. 1062-63).  The ALJ specifically cited Exhibits 6F, 15F & 16F.  A review of

these records confirm the ALJ's characterization.  For instance, Exhibits 15F and 16F contain

numerous progress notes and other medical records in which McClellan was found to be alert, attentive, oriented, and able to interact well with others, including during field trips. (*E.g.*, Tr. 1451, 1470, 1479, 1480, 1481, 1483, 1518, 1519, 1535, 1552, 1565-69, 1600). Thus, even if McClellan's headaches continued to bother him to some extent, he has not shown that they were so debilitating as to require different functional limitations than those imposed by the ALJ.

The ALJ also referenced numerous instances where he found McClellan's subjective statements embellished, or inconsistent with the evidence. For example, the ALJ noted that McClellan violated his narcotic pain contract when he attempted to receive medication from Dr. Bryant and another pain clinic at the same time. (Tr. 1055). Lastly, the ALJ noted that "[t]he results of the January 2015 investigation supported [that McClellan] was capable of driving several times per day, shopping by himself, engag[ing] with other individuals in a calm and courteous manner, and traveling long distances without assistance or without cognitive difficulty." (Tr. 1058.) Moreover, many of Dr. Hasegawa's own progress notes are consistent with the ALJ's finding. (Tr. 922-1005). For example, on April 17, 2015, Dr. Hasegawa reported that McClellan was "awake, alert, and oriented." (Tr. 946.) He also noted that his "[i]mmediate verbal memory was 3/3 and five minutes' retention 2/3." (*Id.*)

McClellan contends that these reasons ignore the opinions of Dr. Karl Goler, M.D., Dr. Coder, and Dr. West. (ECF No. 13, PageID.2423-24.) This is not true. Neither Dr. Goler nor Dr. Coder ever diagnosed McClellan with traumatic brain injury ("TBI"). (Tr. 679-81; 420). Although Dr. Goler assessed him for TBI on a Disability Benefits Questionnaire, he never diagnosed him with it in a treatment record. (*Id.*). Dr. Goler found McClellan to have severe impairment in memory, attention and concentration based largely on McClellan's own subjective responses. (Tr. 679). Likewise, Dr. Coder assessed McClellan on a Disability Benefits Questionnaire for Post

17

Traumatic Stress Disorder ("PTSD").   (Tr. 420-25).   Dr. Coder opined that McClellan had problems with working memory; he never diagnosed him with TBI.   (*Id*.).   Lastly, Dr. West stated that McClellan had problems with processing speed and initial encoding, but never diagnosed him with TBI.   (Tr. 1009).

As to Dr. West, the ALJ noted that during his evaluation, McClellan "demonstrated no signs of attention or memory deficits, with [McClellan] showing a normal thought process and acknowledging being able to drive and complete business transactions." (Tr. 1065, 1007-09). The ALJ also noted that "a brain MRI, performed on March 13, 2014, showed no evidence of a prior intracranial injury or traumatic brain injury.   Furthermore, in December 2014, [McClellan] underwent EEG testing, which revealed no evidence of any epileptiform discharges. . . . An updated brain MRI on December 15, 2016, continued to affirm there was no objective findings supportive of a prior traumatic brain injury . . ." (Tr. 1056-57, 1007, 1497, 1959).  The ALJ noted that although McClellan sought treatment on October 7, 2017, for a "possible" seizure, "further testing, including an EEG, showed no evidence of seizure activity or brain injury . . ."  (Tr. 1057, 2319).

The ALJ referenced the 2015 fraud investigation, noting its findings that McClellan was "able to go out to eat at restaurants with friends and family, run errands, visit a water park, and gamble at casinos, all activities that were not commensurate with an individual with the significant limitations to concentration, memory and social functioning to which [McClellan] attests.  (Tr. 1058, 855-64).   The ALJ also referenced that McClellan was noted "to be generally attentive during his therapy sessions, both with the group and individual meetings with his social worker" and that he "was consistently noted . . . to be self-advocating, and capable of discussing his medical history and progress within normal limits [], with records from late 2016 clearly identifying [his]

thought processes being described as goal-directed, with intact memory and attention." (Tr. 1059, 1785; *see also supra* at 10 (citing Ex. 15F and 16F progress notes); *see also* Tr. 1049 ("the medical evidence quite often documents [McClellan] being an effective self-advocate for himself, and largely demonstrating no significant issues with limited cognitive functioning or [] memory deficits, as evidenced by psychiatric treatment notes."), 1051 ("[t]he medical evidence itself fails to establish any substantial issues with [McClellan's attention and concentration abilities . . . as evidence by his psychiatric treatment record, which reveals [McClellan] generally presenting with intact attention and clear, logical thought.")).

The ALJ noted that in 2017, McClellan reported "watching a lot of movies at home, and playing the video game system X-box often, both activities that require a certain level of mental functioning and attention and concentration . . ." (Tr. 1066, 1404, 1968-71). McClellan also indicated that he was hoping to do more fishing and camping. (Tr. 1971). And, the ALJ specifically contrasted that against McClellan's report just a few weeks later "that his mental functioning was so poor that he even had difficulty remembering to eat, being almost totally dependent upon his wife to complete his activities of daily living." (1066, 1730). The ALJ also noted that McClellan's claims about poor concentration and memory were "inconsistent with [his] performance at the disability hearing . . . he was able to recall how long it took for fights to clear, and had no difficulty with memory recall when it came to remembering alleged previous incidents of arguments he purportedly had with others or issues with anger outbursts." (Tr. 1066). All of this constitutes substantial evidence in support of this aspect of the ALJ's decision.

Finally, ALJ Loughlin reasonably accounted for the opinions in his RFC assessment when he made adjustments to the light work category by stating that McClellan could only "understand and remember simple instructions, make simple work-related decisions, carry-out simple

instructions . . . *occasionally* deal with changes in a routine work setting, and [] *occasionally* deal with supervisors and coworkers but not the public" and *could not* "perform work requiring a specific production rate, such as assembly line work or hourly quota." (Tr. 1050).

In sum, ALJ Loughlin provided the type of analysis that Judge Michelson found to be lacking in the prior ALJ decision; he provided good reasons for his decision to give only little weight to Dr. Hasegawa's opinion, and his overall handling of that opinion is supported by substantial evidence in the record.

> 2.    *ALJ Loughlin provided a reasoned explanation as to why he gave little weight to the VA's disability rating, and that explanation is supported by substantial evidence*

ALJ Loughlin specifically referenced Judge Michelson's remand order when explaining why he gave little weight to the VA's disability rating:

> As part of its order, the U.S. District Court determined that the previous ALJ decision did not afford sufficient rationale explaining why it provided little weight to the determination of the decision of the VA, which found the claimant to have a one-hundred percent compensation for a service-connected disability.

(Tr. 1061).

He went on to state, "I will provide both a deeper rationale and an explanation as to why the VA disability rating was provided little weight, and why I affirm the conclusion of the previous ALJ to give it such little weight:"

> Veteran Disability Compensation benefits are afforded to veterans to compensate them for service connected injuries and illnesses, whereas the Agency considers all medically determinable impairments.  Furthermore, disability ratings for VA benefits are a legal/medical determination, rather than a vocational determination as are those determinations made by the Agency.  VA benefits provide no consideration for the veteran's age or education, very little or no vocational evidence considered, and are fundamentally different from the Agency's determination of disability in that it is removed from whether or not a veteran is capable of performing past or other work.  Indeed, veterans with 100% disability rating often times are fully capable of performing work within a national or regional economy,

20

and the eligibility requirements for the Agency are much more stringent than for VA disability compensation.  Nonetheless, even despite the above, pursuant to 20 CFR 404.1527(f), any determination of disability made by another governmental agency is based on the rules of that agency, and is not binding upon the Agency itself.  The Agency's determination is based upon social security law.

That is not to say that the opinion rendered by another governmental agency cannot be considered as an opinion from an "other source" under the Social Security regulations (20 CFR 404.1527(f)).  Even so, in the present case, the determination of disability made by the VA should still be afforded little weight.  As discussed in detail above, the claimant's medical findings do not support the level of severity he claims, as there are significant concerns within the medical record of the veracity of the claimant's allegations. These concerns are highlighted by the previous fraud investigation. (Exhibit 6F), as well as numerous inconsistencies since that investigation, as noted above.  Furthermore, records from the prior disability hearing period note that the claimant's medical care was conservative in nature, with good effect (Exhibit 2F), and his physical condition failed to become significant until early 2017, when he was recommended to undergo lumbar surgery (Exhibit 13F/2-9).  Even then, the claimant showed considerable improvement in his functioning and pain symptoms following surgery (Exhibit 7F-4).  Thereby, the finding of the VA, restricting the claimant to "100% disability," is inconsistent with the medical findings, and therefore must continue to be provided little weight.

(Tr. 1061-62).

McClellan finds fault in this analysis stating, "ALJ Loughlin cites no support for his statement that "Social Security decisions are vocational not medical determinations."  (ECF No. 13, PAgeID.2420.)  However, as shown above, he stated: "[D]isability ratings for VA benefits are *a legal/medical determination, rather than a vocational determination* as are those determinations made by the Agency."  (Tr. 1061)(emphasis added).  Moreover, there is no rule that an ALJ must provide legal citations when analyzing a disability determination by another agency.

Indeed, the Sixth Circuit has not set forth specific requirements for an ALJ weighing a 100% disability determination by the VA. *See LaRiccia v. Comm. Soc. Sec.*, 549 Fed. Appx. 377

(6th Cir. 2013) (citing *Stewart v. Heckler*, 730 F.2d 1065 (6th Cir. 1984)).  20 C.F.R. § 404.1504 only states that "a determination made by another agency that [a claimant is] disabled or blind is not binding on the SSA."  *See* 20 C.F.R. §404.1504.  However, the ALJ may find the determination relevant, depending on the similarities between the rules and standards each agency applies to assess disability.  *See* SSR 06-03p, 2006 WL 2329939, at *7 (August 9, 2006) ("[B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency.").  Regardless, an ALJ "should explain the consideration given to these decisions in the notice of decision." *Id.*  Contrary to McClellan's assertions, the ALJ did just that.

The ALJ first explained the difference between the VA's system and the SSA system.  (Tr. 1061-62).  Then, he explained, in great detail, why he afforded the VA's rating little weight.  (*Id*.).  This explanation focuses on the lack of supportability for the VA rating and the lack of consistency of this rating with McClellan's medical records.  (*Id*.).  ALJ Loughlin noted that the medical record did not support McClellan's subjective complaints to the VA medical providers, as detailed above.  (Tr. 853-864, 970, 1061-62).  In addition, the ALJ noted that McClellan's condition improved with conservative care, which contradicted the VA's rating.  (Tr. 760-65, 1061-62).  Third, ALJ Loughlin noted that McClellan's alleged physically disabling conditions did not become significant until 2017, and then improved with surgery.  (Tr. 1061-62; 1285-1368).  Again, the ALJ's analysis follows Judge Michelson's order explicitly, and is supported by substantial evidence.  As such, it should be affirmed.

3.    *ALJ Loughlin properly considered the opinions and restrictions of Dr. Zatolokin and Social Worker/Therapist Porta*

McClellan argues that "ALJ Loughlin failed to properly reconsider the weight given to the opinions and restrictions of Dr. Zatolokin and Social Worker/Therapist Porta."  (ECF No. 13,

PageID.2424.)  This argument fails for a few reasons.  First, Judge Michelson's opinion made clear that she did not conclude the weight given to the opinions was incorrect; rather, Judge Michelson said the ALJ "may, but is not required to" assign greater weight to those opinions.  (Tr. 1178). Second, and more fundamentally, the ALJ specifically addressed these opinions and thoroughly explained why he gave them "little weight."  (Tr. 1063).  Specifically, the ALJ explained

> The opinion provided by Ms. Porta and Dr. Zatolokin asserted the claimant was markedly limiting [sic] in most areas of mental functioning (Exhibit 10F).  With respect to this assessment, despite the Court's impression, or the claimant's treatment history with either Ms. Porta and Dr. Zatolokin, their assessment is based upon the subjective complaints and statements of the claimant, who has demonstrated he is not a reliable or credible source, and therefore, do not deserve any special weight or significance. Furthermore, a claimant's residual functional capacity is not a medical issue, but is an administrative finding that is reserved to the Commissioner. Accordingly, medical opinions expressed in this form can never be given controlling weight or special significance, even if it is given by a treating physician (20 CFR 404.1527(e)).  As documented by several instances above, the claimant's psychiatric treatment records, in addition to other documentation, supports that his level of mental functioning is far greater that he alluded to, as affirmed by his progress notes with the VA (Exhibits 15F & 16F).  It is only when the claimant is presented with information that is detrimental to his goals or advantageous to his claim of disability benefits does the claimant allege severe memory deficits or mental functioning. Examples of this activity are when he attempted to acquire additional narcotic pain medication (Exhibit 14F/31-32) or the medical visit on July 24, 2017, when he alleged significant memory deficits (Exhibit 17F/3-8). As their severe limitations, and this indication of Dr. Zatolokin increasing the claimant's medications, are all predicated on the claimant's subjective allegations, which are of dubious credibility, I must therefore continue to afford their assessment little weight.

(Tr. 1063).

McClellan challenges this assessment stating that "none of [his] treating or examining physicians ever expressed concern that he was malingering or otherwise exaggerating his symptoms."  (ECF No. 13, PageID.2425.)  That may be true, but the ALJ nevertheless provided a reasoned analysis as to why McClellan's self-reports to his doctors detracted from the weight to

be given to their opinions.  The Sixth Circuit has held that ALJs are in the best position to evaluate

a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the

claimant 'is invaluable and, should not be discarded lightly.'"  *Kirk v. Sec'y of Health & Human*

*Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577

F.2d 383, 387 (6th Cir. 1978)).  Moreover, an ALJ is not simply required to accept the testimony

of a claimant if it conflicts with medical reports and other evidence in the record.  *See Walters v.*

*Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Instead, "[t]he determination or decision

must contain specific reasons for the weight given to the individual's symptoms, be consistent with

and supported by the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms."  *Id.*

Here, the ALJ reviewed the record evidence in making his determination and explained his

reasoning for this assessment throughout the decision.[3]  The ALJ indicated that McClellan "has

demonstrated that he is not a reliable or credible source."  (Tr. 1063).  This statement is supported

by the fraud investigation (Tr. 853-64), and also by other contradictions between McClellan's

hearing testimony and the record evidence that the ALJ noted.  (Tr. 1066).  For example, the ALJ

noted that "[r]ecords from 2016 and early 2017 continue to highlight the inconsistencies between

[McClellan's] allegations of severe impairment, and his actual functional abilities."  (*Id.*)  The ALJ

stated that these records revealed that McClellan was "active and engaged" in group therapy,

enjoyed going out in public, and playing video games.  (*See id.*)  Yet, in July of 2017, he "suddenly

claimed that his mental functioning was so poor that he even had difficulty remembering to eat."

(*Id.*)  Moreover, the ALJ noted that during his hearing testimony McClellan was able to access

---

[3] It is noteworthy that both ALJ Kleber (Tr. 10-30) and ALJ Loughlin (Tr. 1042-69) found
substantial evidence that belied McClellan's subjective complaints.

details regarding previous arguments without any problem.  (*See id.*)  Lastly, Michelle McClellan's testimony that she worked full time, and left McClellan at home alone, was inconsistent with McClellan's claims of extreme mental and physical restrictions.  (*See id.*)

ALJ Loughlin also reasoned that he gave the Zatalokin/Porta opinions little weight because McClellan's "psychiatric treatment records, in addition to other documentation, supports that his level of mental functioning is far greater than he alluded to." (Tr. 1063).  This finding is supported by McClellan's progress in therapy sessions.  (Tr. 1532-1725; *see supra* at 10).

Finally, the ALJ adequately addressed the "updated assessment" that Dr. Zatolokin provided which mirrored his initial assessment.  (Tr. 1063-64, 2340-43).  In short, Dr. Zatolokin simply noted that McClellan received in-patient mental health treatment "from August 2016 until November 23, 2016" and then concluded that this "confirmed" his prior conclusions about McClellan's limitations.  (Tr. 2340).  The ALJ supportably gave this updated opinion little weight.  Among the slew of reasons given by the ALJ, he noted that Dr. Zatolokin had not treated McClellan in over two years, and that "the 2016 records he claims to have reviewed and which are purportedly the basis for his findings [] show [McClellan] showing significant progress with his psychiatric treatment and do not support the severe restrictions he claims are necessary."  (Tr. 1063-64).  As discussed above, the ALJ's characterization of McClellan's progress reports is supported in the record.  Moreover, earlier in his decision, the ALJ noted that the "inpatient" hospitalization that Dr. Zatolokin was referring to related to a specific stressful incident in which McClellan had been overcharged at an unfortunate time – while he was staying at a hotel for his daughter's wedding, leaving him unable to pay for certain items.  (Tr. 1058, 1628).  Although McClellan did receive brief voluntary inpatient treatment, when he arrived, his speech was clear and coherent, and he was able to participate in group settings.  (Tr. 1058, 1705, 1809).  During

each of the next two days, McClellan was alert, oriented, attentive, interacted with others, and reported that he "felt a lot better." (Tr. 1790, 1794, 1808.) It was quickly determined that he no longer met "acute criteria." (Tr. 1808.) McClellan was "discharged on the medications he stabilized on during his inpatient stay," and was "calm and future oriented in his thinking." (Tr. 1800, 1806). He then saw his social worker every two weeks and began the group therapy which, as discussed above, he was able to fully participate in. (Tr. 1058).

In sum, although the ALJ recognized that McClellan had some severe mental health conditions – including migraines, bipolar disorder, and anxiety disorder – the ALJ provided a reasoned explanation, supported by ample record evidence, for the weight he gave to the opinions in question. Accordingly, this Court is not at liberty to disturb the ALJ's decision. As explained above, this Court must affirm an ALJ's decision if it is supported by substantial evidence, "even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

For all of the reasons stated above, the Court finds that ALJ Loughlin's decision is supported by substantial evidence, and his decision should therefore be affirmed.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**ECF No. 15**) be **GRANTED**, McClellan's Motion for Summary Judgment (**ECF No. 13**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: August 28, 2020        s/David R. Grand
Ann Arbor, Michigan        DAVID R. GRAND
                                                 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 28, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager