UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES R. MCCLELLAN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:19-cv-11970-LJM-DRG
Honorable Laurie J. Michelson

**OPINION AND ORDER ACCEPTING REPORT AND RECOMMENDATION [17], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]**

James McClellan suffers from a number of health conditions, some related to his military service. McClellan believes that his health conditions prevent him from working a full-time job on a sustained basis. So, in 2014, at age 42, he applied for disability benefits from the Social Security Administration. The Commissioner of Social Security denied McClellan's application.

McClellan then appealed to federal court. After consideration, this Court remanded the case for further administrative proceedings. Although the Court primarily found that the administrative law judge had not adequately explained her decision to discount an opinion from a treating doctor, the Court also found that the ALJ did not adequately justify the rejection of a disability rating by the U.S. Department of Veterans Affairs. The VA had given McClellan a 100% disability rating.

On remand, a different administrative law judge was assigned to McClellan's case and new evidence was introduced. But the end result was the same: the Commissioner of Social Security again denied McClellan's application.

So McClellan again appeals the Commissioner's decision. All pretrial matters have been referred to Magistrate Judge David R. Grand. He recommends that this Court affirm the Commissioner's determination that McClellan is not disabled under the Social Security Act. While the Court believes that, like the first ALJ, the second ALJ could have done a better job in assessing the VA's disability rating, ultimately, the Court ultimately finds no reversible error. So the Court will accept Magistrate Judge Grand's recommendation to affirm the Commissioner's disability determination.

## I.

### A.

McClellan's medical record is extensive—spanning well over 1,000 pages. Given that two ALJ's have detailed McClellan's medical history (to say nothing of two reports and recommendations also summarizing McClellan's medical information), this Court provides only a sketch of McClellan's conditions.

McClellan suffers from a number of physical-health conditions. He has had lumbar-spine issues since at least 2013. (PageID.1028.)[1] McClellan was prescribed pain medications, physical therapy, and epidural injections for his lumbar-spine issues. (PageID.549, 1028.) In April 2017, an MRI showed a "large disc herniation at L5-S1" (PageID.1409), and in June 2017, McClellan underwent an L5 laminectomy and an L5-L6 disectomy (PageID.1340). According to McClellan, the surgery did not resolve the issues, and he still uses a cane or walker. (PageID.1139, 1141.) McClellan has also been prescribed several medications for migraines, and he was also prescribed sunglass to wear indoors for his migraines. (PageID.1338, 1378, 1439, 1786–1787.) According to

---

[1] Unless indicated otherwise, all record citations are to ECF No. 10, the administrative record.

McClellan, he still experiences migraines four times a week; these require him to lie down in a dark and quiet room. (PageID.1131–1134.) McClellan also has sleep apnea and mild COPD. (*See* PageID.1103.)

McClellan also suffers from a number of mental-health conditions. He has been diagnosed with post-traumatic stress disorder, anxiety, and depression. (PageID.451, 2246–2247, 2282–2283.) McClellan's mental-health conditions have been treated with numerous medications as well as therapy. (PageID.2027, 2048.) Some cognitive tests have revealed that McClellan is moderately impaired in phonemic verbal fluency and severely impaired in semantic verbal fluency. (PageID.1050.) At the hearing before the ALJ, McClellan stated that he would forget 15-minute conversations right after having them (PageID.1131); McClellan's wife testified that "[f]amily members . . . remind him to eat, . . . remind him to go to the bathroom, to shower, just to do daily tasks" (PageID.1151). McClellan and his wife also testified about his angry outbursts, including in public. (PageID.1138–1140.)

For his physical- and mental-health conditions, McClellan has been regularly prescribed over 20 medications at one time. (PageID.1321–1324, 1857, 2048, 2246–2247.)

**B.**

Due to his physical- and mental-health conditions, McClellan believed he was unable to work a full-time job on a sustained basis. So, in March 2014, he applied for disability insurance benefits from the Social Security Administration. (PageID.43.)

An administrative law judge acting on behalf of the Commissioner of Social Security determined that McClellan was not "disabled" as that term is used in the Social Security Act. (PageID.60.) In reaching that determination, the ALJ relied heavily on a fraud-investigation report. According to the ALJ: "a fraud investigation report dated January 29, 2015 showed that Mr.

McClellan was able to drive four to five times per day, attend a high school football game in cold weather, travel long distances, go out to dinner with friends and family, gamble at multiple casinos, pay attention to detail, and follow instructions." (PageID.48.)

In 2016, McClellan appealed that determination to federal court. *See McClellan v. Comm'r of Soc. Sec.*, No. 16-10593 (E.D. Mich. filed Feb. 18, 2016). The case was assigned to Magistrate Judge David R. Grand for a report and recommendation and to the undersigned for disposition. Magistrate Judge Grand recommended that the case be remanded for two reasons.

For one, Magistrate Judge Grand found that the ALJ erred in assigning "little weight" to the opinions from two of McClellan's treating sources. *See McClellan v. Comm'r of Soc. Sec.*, No. 16-10593, slip R. & R. at 9–20 (E.D. Mich. Dec. 16, 2016). McClellan's treating neurologist, Hisanori Hasegawa, had opined that McClellan was "clinically disabled" as a result of a TBI, intractable headaches, and other conditions. *Id.* at 10. And McClellan's treating psychologist, Thomas Zatolokin, and treating therapist, Rebecca Porta, had opined that McClellan's mental abilities were markedly limited, including his ability to understand and remember even very simple instructions. *Id.* at 10–11. Having reviewed the record evidence in some detail, including assessments by three other medical experts, Magistrate Judge Grand concluded that "the ALJ's decision to give 'little weight' to the opinions of Dr. Hasegawa and Dr. Zatolokin [was] not supported by substantial evidence." *See id.* at 20. Further, while not his primary recommendation, Magistrate Judge Grand found that the ALJ did not adequately explain why the treating-source opinions were given little weight, and thus, violated the procedural aspect of the treating-source rule. *See id.* at 12 n.4.

Magistrate Judge Grand also found that the ALJ had not given due consideration to a disability rating by the U.S. Department of Veterans Affairs. *See McClellan*, slip R. & R. at 20–

4

22. The VA had determined that McClellan's disability rating was 100%. (PageID.425.) (McClellan thus receives full disability benefits from the VA.) But the ALJ had assigned the VA opinion "little weight" because, according to the ALJ, "the record [did] not support a finding of disabled." (PageID.54.) According to Magistrate Judge Grand, that was conclusory. *McClellan*, slip R. & R. at 22. Further, because the two treating-source opinions should not have been assigned "little weight," Magistrate Judge Grand could not find that substantial evidence supported the ALJ's statement that "the record [did] not support a finding of disabled." *Id.*

The Commissioner objected to Magistrate Judge Grand's recommendation, and this Court sustained-in-part those objections. *See generally McClellan v. Comm'r of Soc. Sec.*, No. 16-10593, 2017 WL 1173772 (E.D. Mich. Mar. 30, 2017). To oversimplify a bit, this Court found that Dr. Hasegawa had relied heavily on McClellan's self-reported symptoms and offered little more than a bottom-line finding of "disabled," which is a determination reserved to the Commissioner. *See id.* at *3. As for the Porta-Zatolokin opinion, it was "unclear" to this Court "what objective evidence Porta and Dr. Zatolokin relied on to find that McClellan had very severe functional limitations." *Id.* at *4. For these and other reasons, the Court did not adopt Magistrate Judge Grand's recommendation to find that the ALJ reversibly erred in assigning the treating-source opinions "little weight." *Id.* at *6. But the Court did accept the Magistrate Judge's finding that the ALJ did not adequately explain why she assigned Dr. Hasegawa's opinion "little weight" and thus violated the explanatory-requirement of the treating-source rule. *Id.* at *6. And although this Court did not expressly find that the ALJ did not adequately explain why she assigned the Porta-Zatolokin opinion "little weight," it did note that the ALJ's explanation could have been better. For instance, Dr. Adrienne West had found that McClellan had "severe" limitations in semantic verbal fluency and certain processing-speed tasks (PageID.1049–1050), and yet the ALJ did not

say why those findings by Dr. West were not supportive of the Porta-Zatolokin opinion, 2017 WL 1173772, at *8.

The Court also agreed with Magistrate Judge Grand that the ALJ had failed to adequately explain why she rejected the disability rating by the VA. This Court explained, "The VA provided that if McClellan's cognitive deficiencies were solely attributable to his PTSD and depression, he would have received a 70% disability rating. And, it appears, the primary basis for this rating was Dr. Richard Coder's assessment." *McClellan*, 2017 WL 1173772 at *8. The Court continued, "Likely because Dr. Coder's assessment was not strictly an opinion (it provided no functional limitations), the ALJ did not say whether she found his assessment credible. But without a determination by the ALJ that Dr. Coder's assessment was not credible or uninformative, it is not immediately apparent why the ALJ rejected the VA's disability rating based on that very assessment." *Id.*

Thus, this Court remanded the case for further administrative proceedings. "On remand, the ALJ should further explain why Dr. Hasegawa's opinion and the VA's disability rating were effectively rejected," the Court ordered. *McClellan*, 2017 WL 1173772, at *8. "In doing so, the ALJ may, but is not required to, assign greater weight to Dr. Hasegawa's opinion or Porta and Dr. Zatolokin's opinion for the reasons set forth in the Magistrate Judge's opinion." *Id.*

## C.

So the case returned to the Social Security Administration. A new ALJ was assigned to the case, years of new medical evidence was added to the record, and new testimony from McClellan and his wife was taken. (*See* PageID.1088, PageID.1117–1119.) Still, some things remained the same. The second ALJ to consider McClellan's disability application also relied significantly on the fraud investigation and expressed concerns over McClellan's veracity. (PageID.1101, 1105.)

6

And like the first ALJ, the second ALJ assigned "little weight" to each of Dr. Hasegawa's opinion, Porta and Dr. Zatolokin's opinion, and the VA's 100% disability rating. (PageID.1105–1106.) And, in the end, the result was the same: the ALJ found that McClellan was not disabled for purposes of obtaining social security benefits. (PageID.1112.)

In 2019, McClellan again appealed to federal court. He made three arguments: the ALJ did not properly assess Dr. Hasegawa's opinion, the ALJ did not properly assess the Porta-Zatolokin opinion, and the ALJ did not properly assess the VA's disability rating. (*See* ECF No. 13.)

The case was again assigned to Magistrate Judge Grand for a report and recommendation and this Court for disposition. In Magistrate Judge Grand's view, the ALJ "provided a reasoned explanation as to why the SSA rejected Dr. Hasegawa's opinion, and that explanation is supported by substantial evidence" (ECF No. 17, PageID.2480), the ALJ "properly considered the opinions and restrictions of Dr. Zatolokin and Social Worker/Therapist Porta" (*id.* at PageID.2488), and the ALJ "provided a reasoned explanation as to why he gave little weight to the VA's disability rating, and that explanation is supported by substantial evidence" (*id.* at PageID.2486). Thus, Magistrate Judge Grand recommends that this Court affirm the Commissioner's finding that McClellan is not disabled. (ECF No. 17, PageID.2492.)

McClellan now objects. (ECF No. 19.) McClellan no longer argues that the ALJ erred in assigning Dr. Hasegawa's opinion or the Porta-Zatolokin opinion "little weight." Instead, McClellan homes in on the ALJ's assignment of the VA's disability rating "little weight." In McClellan's view, the ALJ did not adequately explain why the VA's disability rating was discounted and did not comply with this Court's prior order regarding the VA's rating. (*See generally* ECF No. 13.)

7

**II.**

When, as here, a party objects to a Magistrate Judge's report and recommendation, the Court must review the issue raised by the objection *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court has no obligation to review un-objected-to issues. *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *1 (E.D. Mich. Apr. 16, 2012); *see also Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).

So in this case, de novo review means that this Court decides anew whether substantial evidence supports the ALJ's decision to assign the VA's disability rating "little weight" and whether the ALJ adequately explained that assessment. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." (internal quotation marks omitted)).

**III.**

Although the Court ultimately concludes that there is no reversible error, the Court agrees with much of what McClellan has to say about the ALJ's assessment of the VA's disability rating.

To start, although the ALJ highlighted a number of differences between the standards that the VA and the SSA use to assess disability, the ALJ did not explain how those differences mattered in McClellan's case. For example, the ALJ stated, "Veteran Disability Compensation benefits are afforded to veterans to compensate them for service connected injuries and illnesses, whereas the Agency considers all medically determinable impairments." (PageID.1104.) That may well be an accurate statement of the law. But why does it matter here? If the SSA considers *more* impairments than the VA, that would favor disability, not cut against it.

The ALJ's reference to McClellan's physical condition also is not a basis for rejecting the VA's disability rating. In assessing the VA's rating, the ALJ reasoned that McClellan's physical condition did not become severe until 2017 (well after the VA's rating), and because, after surgery, McClellan's lumbar-spine conditions improved. (PageID.1105.) But the VA's 100% disability rating was not based on McClellan's lumbar-spine problems. Instead, the VA based its 100% disability rating on McClellan's PTSD and TBI. (PageID.401, 404.)

The Court also agrees with McClellan that the ALJ did not address all of the specific records that this Court flagged as possibly supporting the VA's rating. For instance, the VA's rating is based in part on the medical assessment conducted by Richard Coder, Ph.D. In this Court's prior opinion, the Court stated "without a determination by the ALJ that Dr. Coder's assessment was not credible or uninformative, it is not immediately apparent why the ALJ rejected the VA's disability rating based on that very assessment." *McClellan*, 2017 WL 1173772, at *8. Yet, in his narrative, the ALJ nowhere mentions Dr. Coder.

So, as McClellan argues in his objections, the ALJ's treatment of the VA rating leaves much to be desired. That said, the Court believes that the ALJ did not commit reversible error in assessing the VA's rating.

As an initial matter, to reject the VA's determination, the ALJ's burden was modest. True, several federal appellate courts have said that a VA disability rating is entitled to "great weight" in a social security benefits determination. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). But the Court is not aware of any Sixth Circuit authority so holding. In this Circuit, the ALJ only needed to "consider" the VA rating, assign it a weight, and give an explanation for the weight assigned. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 535 (6th Cir. 2019); *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 310 (6th Cir. 2018); *LaRiccia v. Comm'r of Soc. Sec.*,

9

549 F. App'x 377, 387–88 (6th Cir. 2013). And the usual standard of review is substantial evidence. *Longworth*, 402 F.3d at 595. Coupling the two points of law means that so long as the weight an ALJ assigns to a VA rating is supported by substantial evidence, and the reason for assigning that weight is supported by substantial evidence, a reviewing court has no basis to reverse.

And that is the case here.

Aside from discussing McClellan's physical condition, the ALJ provided several reasons for assigning the VA's rating "little weight." The ALJ stated, "As discussed in detail above, the claimant's medical findings do not support the level of severity he claims, as there are significant concerns within the medical record of the veracity of the claimant's allegations. These concerns are highlighted by the previous fraud investigation, as well as numerous inconsistencies since that investigation, as noted above." (PageID.1005 (citation omitted).) "[A]s noted above" refers in part to the following portion of the ALJ's narrative: "The claimant was further noted [in the fraud-investigation report] to be able to go out to eat at restaurants with friends and family, run errands, visit a water park, and gamble frequently at casinos, all activities that were not commensurate with an individual with the significant limitations [in] concentration, memory and social functioning to which the claimant attests." (PageID.1101.) Also "above" in his narrative, the ALJ stated that McClellan did well in his group therapy sessions: "The claimant was noted to engage in activities in public often, such as walking around the mall, visiting a museum, and going out to restaurants to eat. Through the VA, the claimant additionally was noted to be taking a golf skills class . . . . The claimant was commented to be generally attentive during his therapy sessions, both with the group and individual meetings with his social worker, with his mental health symptoms concluded to be improving and lessening." (PageID.1102 (citations omitted).)

10

All of these statements are supported by substantial evidence. As the ALJ stated, the fraud-investigation report recites evidence of McClellan socializing with friends and family and taking a trip to Traverse City. (PageID.900.) And the fraud-investigation report also states that McClellan was able to follow spoken instructions to locate an item in Home Depot (PageID.901), that he regularly went to the store (PageID.903), that he went to casinos and played table games like blackjack (PageID.900, 903), that he was able to recall a conversation from three weeks prior (PageID.900). Arguably, as the ALJ found, these activities are "not commensurate with an individual with the significant limitations [in] concentration, memory and social functioning." (PageID.1101.) So that statement is supported by substantial evidence.

Substantial evidence also supports the ALJ's credibility finding. In a function report submitted to the SSA, McClellan stated that he was "unable to focus and follow directions" (PageID.257), that his family members needed to do the shopping (*id.*), that he could not follow spoken instructions (PageID.260), and that he used a cane and walker (PageID.261). Yet, in addition to the findings in the fraud-investigation report already recounted (that McClellan shopped and could follow spoken directions), the report also states that McClellan was seen "walk[ing] with a brisk pace" into a store "with no limp and no walking aid" and that the investigator never saw McClellan walk abnormally. (PageID.901.) So substantial evidence supports the ALJ statement that "there are significant concerns within the medical record of the veracity of the claimant's allegations."

The ALJ's remarks about group therapy also find substantial evidentiary support. Records reflect that during VA outings or group therapy sessions, McClellan was able to go to the mall, buy a gift for his wife, and order his own food; go to an air museum, look over the aircraft, and ride a flight simulator; participate in a few golf-skills classes; and play in a pool tournament.

(PageID.1530–1532, 1564.) McClellan was also able to play a board game for about 60 minutes; he was able to learn the rules of the game, take his turns with minimal cues, and discuss logical moves with his teammates. (PageID.1731.)

To sum up so far, the ALJ reasoned that McClellan had some ability to concentrate, remember, and socialize and that McClellan exaggerated his limitations. And, as just discussed, there is substantial evidence to support those findings.

So the only remaining question is whether those substantially-supported findings explain why the ALJ rejected the VA's rating. On this point, the ALJ's narrative is admittedly weak. The ALJ never expressly says why McClellan's veracity and his limited (but non-zero) capacity to concentrate, remember, and socialize justify assigning the VA's rating "little weight."

But this missing half step can be inferred. The VA gave McClellan a 100% disability rating based on his PTSD and TBI. (PageID.401, 404, 425.) But the ALJ thought that McClellan's activities during the fraud investigation "were not commensurate with an individual with the significant limitations [in] concentration, memory and social functioning to which the claimant attests." So, apparently, the ALJ did not believe, as the VA did, that McClellan's PTSD and TBI justified a finding of complete disability. Second, it was Dr. Coder who assessed McClellan's PTSD for the VA and it was Dr. Karl Goler who assessed McClellan's TBI for the VA. While both medical experts did perform cognitive testing of McClellan (*see* PageID.460, 797), some of these tests were based on McClellan's self-assessment, *see* American Psychological Association, *Beck Depression Inventory (BDI)*, https://perma.cc/3FHW-Q4LL ("The Beck Depression Inventory (BDI) is a 21-item, self-report rating inventory[.]"); VA.gov, *PCL*, https://perma.cc/68KG-3SK7 ("The PCL is a self-report measure[.]"). And aside from the tests, it is apparent that both Dr. Coder's and Dr. Goler's assessments were partly based on McClellan's self-reporting. For

12

instance, Dr. Goler rated McClellan's social interaction the lowest on a four-point scale because "[h]e wants to be left alone; people piss him off." (PageID.783.) Dr. Goler rated McClellan's visual-spatial orientation the lowest possible because "[h]e gets lost often." (PageID.794.) Given that Dr. Coder's and Dr. Goler's assessment were in part based on McClellan's self-reporting, and that the ALJ questioned the "veracity of the claimant's allegations" (PageID.1105), it can be inferred that another reason the ALJ rejected the VA's rating was that McClellan gave Dr. Coder and Dr. Goler an inaccurate picture of his mental-health and cognitive limitations.

In sum, the Court does not believe the ALJ's treatment of the VA's rating was a paradigm of legal analysis. But it did not have to be. Instead, the ALJ needed only to provide a reasonable explanation—i.e., one supported by substantial evidence—for assigning the VA rating "little weight." The ALJ did so. So this Court must affirm.

## IV.

For the reasons given, the Court ACCEPTS the recommendation of Magistrate Judge Grand (ECF No. 17), GRANTS the Commissioner's motion for summary judgment (ECF No. 15), DENIES McClellan's motion for summary judgment (ECF No. 13), and AFFIRMS the disability determination of the Commissioner.

SO ORDERED.

Dated: October 21, 2020

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE